# EXHIBIT B

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN

Anthony Dowell, #270700

    Plaintiff,

v.

Oliver et al

    Defendants,

Case No.: 2:19-cv-12402
District Judge: Stephen J. Murphy, III
Magistrate Judge: Patricia T. Morris

---

| | |
|---|---|
| ANTHONY DOWELL, #270700<br>Lakeland Correctional Facility<br>141 First St.<br>Coldwater, MI 49036<br>*Pro Se Plaintiff* | CHAPMAN LAW GROUP<br>Wedad Suleiman (P81970)<br>Attorney for Defendants Sharon Oliver, M.D.<br>and Joshua Buskirk, P.A.<br>1441 West Long Lake Rd., Suite 310<br>Troy, MI 48098<br>(248) 644-6326 |
| MICHIGAN DEPT. OF ATTORNEY GENERAL<br>Josh Marcum (P68244)<br>Attorney for MDOC Defendant<br>P.O. Box 30736<br>Lansing, MI 48909<br>(517) 335-3055<br>marcumj1@michigan.gov | wsuleiman@chapmanlawgroup.com |

---

### **AFFIDAVIT OF SHARON OLIVER, M.D.**

STATE OF MICHIGAN    )
    )ss
COUNTY OF SAGINAW    )

    I, SHARON OLIVER, M.D., first being duly sworn on oath, state that if I were called to testify as a witness in this matter, I would testify to the following facts based upon my personal knowledge and review of Anthony Dowell's Michigan Department of Corrections medical chart:

1. On all dates relevant to Plaintiff's Complaint, I was a physician licensed in the State of Michigan.

2. I was a medical provider at the Saginaw Correctional Facility during the time period relevant to this case. I first evaluated Mr. Dowell for a scheduled provider visit on August 30, 2017. Mr. Dowell complained that the pain in his knees was increasing and requested a no stairs detail because he had increasing pain with going up and down the stairs. I noted Mr. Dowell's knees were negative for muscle weakness. At that time, I instructed Mr. Dowell to do range of motion and strengthening exercises. I ordered an x-ray of his knees to determine a medical need for a no stairs detail.

3. On September 13, 2017, I was contacted by Cynthia Pawlaczyk, R.N. regarding Mr. Dowell's fall. After speaking with RN Pawlaczyk, I ordered an x-ray of Mr. Dowell's skull. Later that day, I was contacted for a second time by RN Pawlaczyk regarding Mr. Dowell's complaints of head and right facial pain. I evaluated Mr. Dowell during an unscheduled provider visit. During this visit, I noted Mr. Dowell was observed in healthcare and no post-ictal state was documented, his EKG showed a normal sinus rhythm, he was able to move all extremities, and ambulated easily from healthcare when he was ready to leave. At that time, I ordered nursing to

continue to monitor Mr. Dowell and instructed that if his mental status declined, he would be sent to the ER. I noted I would evaluate Mr. Dowell's prolactin levels and x-ray report when they were available. Mr. Dowell agreed with the plan and would kite healthcare if any problems were to occur.

4. On September 14, 2017, during a nursing evaluation with RN Smith, Mr. Dowell complained of a headache and ongoing pain in the right side of his face. He also complained that his pain has not improved, and that he had pain in his right neck and blurred vision and dizziness. I was contacted by RN Smith and I examined Mr. Dowell for an unscheduled provider visit. Mr. Dowell complained of dizziness and blurred vision in his right eye and I noted his prolactin level was 10.68. Mr. Dowell expressed no other complaints during this visit. I noted Mr. Dowell had a history of persistent hematemesis and his pain would be treated with Tylenol and that his prolactin would be rechecked later during the day. I noted I would await the x-ray results and ordered an attendant to assist Mr. Dowell with movement inside the facility. Mr. Dowell agreed with the plan.

5. On September 15, 2017, I reviewed Mr. Dowell's chart stating that his prolactin level remained within normal ranges, but that I was still waiting for x-ray results. I noted that I would continue to follow Mr. Dowell.

6. On September 20, 2017, I conducted a chart update following a review of the x-rays of Mr. Dowell's knees and orbit. I elected to continue with his current treatment plan, and to discuss the findings with Mr. Dowell during his upcoming appointment.

7. This was my last involvement with Mr. Dowell's medical care as it relates to the allegations in the Complaint.

8. At no time during my care and treatment of Mr. Dowell, did we ever discuss his desire to move to a housing unit with an elevator.

9. As a medical provider, I am not involved in custody placement of prisoners in the prison.

8. My involvement with Mr. Dowell's care as it relates to the allegations in his Complaint is limited to the issues set forth in this affidavit. The matters stated in this Affidavit are based on my personal knowledge and review of his Michigan Department of Corrections medical records during the relevant time period.

9. I do not believe that I, in any way, acted with deliberate indifference in Mr. Dowell's case, as I treated him in a manner that I, in my medical judgment, feel was appropriate.

Further affiant sayeth not.

*[signature]*

SHARON OLIVER, M.D.

Subscribed and sworn to before me
This 29 day of October, 2020.

*[signature: C-Walker]*

Notary Public, State of Michigan
County of Saginaw
My Commission Expires: 9/28/2026
Acting in the County of Saginaw