UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY DOWELL,

          Plaintiff,

v.

DR. SHARON OLIVER, et al.,

          Defendants.
                                       /

Case No. 2:19-cv-12402

HONORABLE STEPHEN J. MURPHY, III

**OPINON AND ORDER
GRANTING DR. OLIVER AND PA BUSKIRK'S
MOTION FOR SUMMARY JUDGMENT [25] AND GRANTING
NURSE SMITH'S MOTION FOR SUMMARY JUDGMENT [36]**

Plaintiff Anthony Dowell, a pro se prisoner, sued Defendants for civil rights violations. ECF 1. Plaintiff asserted deliberate indifference claims against each Defendant under 42 U.S.C. § 1983 for violating his Eighth Amendment rights. *Id.* at 8–9. Plaintiff also asserted claims under the Americans with Disability Act ("ADA") against each Defendant. *Id.*

The Court first referred the case to the pro se prisoner mediation program. ECF 4. After a failed mediation, the Court lifted the stay and ordered the United States Marshals to serve Defendants with the complaint and a summons. ECF 11.

In time, Defendants responded to the complaint. ECF 25; 28. Doctor Oliver and PA Buskirk moved for summary judgment. ECF 25. Plaintiff responded to the motion, ECF 29, and Oliver and Buskirk replied, ECF 31. Three weeks later, Plaintiff filed

1

an addendum to his response. ECF 33. Because the addendum violates local rules, the Court will order the Clerk of the Court to strike it.

Local Rule 7.1(c) allows a party to file only one response in opposition to a motion. "A party must obtain leave of the court to file more than one response." E.D. Mich. L.R. 7.1(c)(3). Because Plaintiff submitted two responses without obtaining leave to do so, Plaintiff violated local rules. Although Plaintiff is pro se, the Court's Practice Guidelines explain that "[p]ro se litigants, like all attorneys appearing before the Court, are expected to adhere to the all procedural rules, including . . . the Local Rules of the Eastern District of Michigan." *See also Branham v. Micro Comp. Analysts*, 350 F. App'x 35, 38 (6th Cir. 2009) ("[F]ederal courts 'have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.'") (quoting *McNeil v. United States*, 508 U.S. 106, 113, (1993)). As a result, the Court will order the Clerk of the Court to strike Plaintiff's addendum, ECF 33.

Nurse Smith later moved for summary judgment, ECF 36, and the parties fully briefed the motion, ECF 37. The Court did not hold a hearing for the pending civil motions because Plaintiff is in custody. E.D. Mich. L.R. 7.1(f)(1). For the reasons below, the Court will grant both summary judgment motions.

## BACKGROUND

Plaintiff claimed that he fell several times in prison and was given poor medical treatment and accommodations after those falls. ECF 29, PgID 301–02. Plaintiff accepted "as true the facts" outlined in ECF 25, PgID 121–32 of Dr. Oliver

2

and PA Buskirk's summary judgment motion. ECF 29, PgID 290; *see also* ECF 37, PgID 469 (Plaintiff explaining that he incorporates his November 30 response to Dr. Oliver and PA Buskirk's summary judgment motion).[1] The Court will detail those facts now.

When Plaintiff was transferred to a new prison, Plaintiff was provided special accommodations that included walking with a wooden cane and ACE wrap for his knees. ECF 26, PgID 156–57.[2] In August 2017, Plaintiff complained of knee pain and requested a no-stair detail to Dr. Oliver. ECF 25-2, PgID 144; ECF 26, PgID 158–59. During the exam, Dr. Oliver noted that Plaintiff lacked muscle weakness in his knees and Dr. Oliver instructed Plaintiff to do motion and strength exercises. ECF 25-2, PgID 144; ECF 26, PgID 160–61. She also ordered an x-ray to determine whether Plaintiff needed a no-stair accommodation. ECF 25-2, PgID 144; ECF 26, PgID 162. The x-ray later revealed that Plaintiff had mild soft tissue swelling in his knees. ECF 26, PgID 165.

Shortly after, Plaintiff complained about his knee pain again and requested a walker or wheelchair to replace his cane. *Id.* at 166, 168. This time, Plaintiff saw Nurse Smith who noted the walker or wheelchair request and noted that Plaintiff's

---

[1] Plaintiff submitted two unsworn affidavits from fellow inmates. ECF 29, PgID 303–06; *see* 28 U.S.C. § 1746(2) (requiring that a declaration state, "'I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)'."). Because the affidavits are unsworn, the Court cannot rely on them to resolve the summary judgment motions. *See* Fed. R. Civ. P. 56(c)(4).
[2] All ECF 26 citations are under seal.

knees lacked redness or discoloring but had slight swelling. *Id.* at 168–69. She informed Plaintiff to call if his symptoms did not subside. *Id.*

A few days later, on September 13, Plaintiff fell on a flight of stairs. *Id.* at 171. After the fall, a nurse examined Plaintiff and noted that Plaintiff could move his arms but complained of forehead pain. *Id.* Dr. Oliver ordered an EKG and x-ray for Plaintiff. *Id.* at 171–72. And Plaintiff received Motrin for the pain. ECF 25-2, PgID 144; ECF 26, PgID 171–72.

But the Motrin did not help, and Plaintiff returned to Dr. Oliver later that day complaining of head pain. ECF 26, PgID 175. Dr. Oliver then treated Plaintiff and instructed Plaintiff that he would be observed for concussion symptoms. ECF 25-2, PgID 144; ECF 26, PgID 175–78. Over time, the swelling in Plaintiff's forehead subsided. ECF 26, PgID 177.

Dr. Oliver followed up with Plaintiff about his normal EKG results, and Dr. Oliver noted that Plaintiff could move his extremities. ECF 25-2, PgID 144–45; ECF 26, PgID 175. Dr. Oliver told Plaintiff to return if any new problems arose. ECF 25-2, PgID 144–45; ECF 26, PgID 178.

The next day, Plaintiff complained about a headache, facial pain, blurred vision, and dizziness. ECF 25-2, PgID 145; ECF 26, PgID 179. Nurse Smith contacted Dr. Oliver who treated his pain with Tylenol and ordered an assistant to help Plaintiff move in the prison. ECF 25-2, PgID 144–45; ECF 26, PgID 182, 186–87. Plaintiff agreed to the treatment plan. ECF 25-2, PgID 144–45; ECF 26, PgID 182.

The day after, Dr. Oliver reviewed Plaintiff's test results and noted that although Plaintiff appeared normal, she would monitor him. ECF 25-2, PgID 144–45; ECF 26, PgID 191. Plaintiff later submitted another complaint about neck and back pain. ECF 26, PgID 193. And, as a result, another x-ray was ordered for Plaintiff. ECF 26, PgID 187; ECF 26, PgID 194.

The next day, Nurse Smith evaluated Plaintiff for blurred vision and dizziness. ECF 26, PgID 195. Nurse Smith noted that Plaintiff appeared otherwise normal. *Id.* at 196–97. Two days later, Plaintiff met with another nurse who found that Plaintiff had discomfort removing his shirt but that he could move his extremities freely and walk with a cane. *Id.* at 199–201.

Plaintiff next requested, a day later, a wheelchair at his doctor's appointment. *Id.* at 202. The healthcare professional who treated Plaintiff explained that she could not issue wheelchairs, but that Plaintiff should try stretching and strength exercises. *Id.*

Plaintiff again complained one day later about pain from his recent fall. *Id.* at 205. When PA Buskirk assessed Plaintiff, Plaintiff complained about knee pain and headaches. ECF 25-3, PgID 149; ECF 26, PgID 207. PA Buskirk noted no abnormalities in Plaintiff and recommended Tylenol, a warm compress, and gentle stretching for treatment. ECF 25-3, PgID 149; ECF 26, PgID 210. PA Buskirk also provided a walker for Plaintiff, but PA Buskirk declined to provide more treatment because the x-rays showed no evidence of arthritis. ECF 25-3, PgID 149; ECF 26, PgID 210, 214. Although Plaintiff told PA Buskirk that he had a history of seizures,

5

Plaintiff declined to take the seizure medication that PA Buskirk offered. ECF 25-3, PgID 149; ECF 26, PgID 210. PA Buskirk explained that he would monitor Plaintiff for seizure symptoms. ECF 25-3, PgID 149; ECF 26, PgID 210

Plaintiff then visited PA Buskirk and complained that he had fallen while using the walker. ECF 25-3, PgID 149; ECF 26, PgID 215. PA Buskirk noted that, after the exam, Plaintiff could easily stand out of a wheelchair and walk using the walker. ECF 25-3, PgID 149–50; ECF 26, PgID 215. PA Buskirk offered to issue Plaintiff a different walker or to return his cane, but Plaintiff declined. ECF 25-3, PgID 149–50; ECF 26, PgID 216.

About a month later, Plaintiff complained of knee and hip pain. ECF 26, PgID 234. Nurse Smith examined Plaintiff and noted that Plaintiff showed a shuffling gait with a limp, but that Plaintiff had good flexion and extension of his lower extremities. *Id.* at 235. Nurse Smith saw no swelling or discoloring. *Id.* Nurse Smith then referred Plaintiff to a provider visit. *Id.*

Plaintiff later saw PA Buskirk who extensively examined Plaintiff's extremities and range of motion. ECF 25-3, PgID 150–51; ECF 26, PgID 237–40. During the exam, PA Buskirk noted that Plaintiff's had limited range of motion due to pain, but Tylenol should continue to treat the pain and that Plaintiff should continue to use a walker. ECF 25-3, PgID 150–51; ECF 26, PgID 239–40. PA Buskirk believed that Plaintiff should use Tylenol rather than a non-steroidal, anti-inflammatory drug so that Plaintiff could avoid worsening his gastrointestinal issues. ECF 26, PgID 240.

More than a month later, Plaintiff went back to PA Buskirk for an exam. ECF 25-3, PgID 151; ECF 26, PgID 249. PA Buskirk determined that Plaintiff's treatment should remain the same because he had normal strength in his hips and should continue his stretching and range of motion exercises. ECF 25-3, PgID 151; ECF 26, PgID 252.

At an exam two months later, PA Buskirk noted that Plaintiff's lower extremities appeared normal aside from pain coming from his range of motion. ECF 25-3, PgID 1512; ECF 26, PgID 258–60. That exam was the last Plaintiff had with any Defendant.

## LEGAL STANDARD

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must identify specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that

7

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

State employees sued in their individual capacities for monetary damages are sometimes entitled to qualified immunity. Qualified immunity is "an immunity from suit rather than a mere defense to liability[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis omitted). Only Nurse Smith asserted qualified immunity as a defense. ECF 36, PgID 366; *see* ECF 25, PgID 133–37 (Dr. Oliver and PA Buskirk's summary judgment brief).

Qualified immunity analysis requires a two-pronged inquiry. First, the Court must consider whether the facts, "when taken in the light most favorable to the party asserting the injury, show the [defendant's] conduct violated a constitutional right[.]" *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (citing *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001)). Second, the Court must determine whether the right was "clearly established such 'that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Saucier*, 533 U.S. at 201–02).

The Court may use its discretion to determine which prong to analyze first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Ultimately, "[p]laintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Maben*

8

*v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (citation omitted). But "courts 'should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.'" *Jones v. Clark Cnty.*, 959 F.3d 748, 765 (6th Cir. 2020) (quotation omitted).

The Court will first grant qualified immunity to Nurse Smith on the deliberate indifference claim because her conduct did not violate Plaintiff's constitutional rights. Employing the same analysis, the Court will grant summary judgment on the deliberate indifference claims against Dr. Oliver and PA Buskirk because their conduct did not violate Plaintiff's constitutional rights. After, the Court will grant summary judgment to Defendants on the ADA claims because the ADA does not authorize a cause of action against Defendants.

I.  Deliberate Indifference Claim

"To sustain a cause of action under § 1983 for failure to provide medical treatment, plaintiff must establish that the defendants acted with 'deliberate indifference to serious medical needs.'" *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To show deliberate indifference, Plaintiff must prove two prongs: one objective, the other subjective.

To satisfy the objective prong, Plaintiff must make one of two showings. Either he had a serious medical condition that created a serious medical need that went

9

untreated, *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (citation omitted), or he had ongoing treatment that was "so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness." *Id.* (citation omitted). To satisfy the subjective prong, he must show that "each defendant 'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk' by failing to take reasonable measures to abate it." *Id.* at 738 (citation omitted). The Court need only address the objective prong here to grant Defendants' summary judgment motions.

For the objective prong, after Plaintiff "had a medical need 'diagnosed by a physician as mandating treatment,'" Plaintiff must show "that the prison failed to provide treatment, or that it provided treatment 'so cursory as to amount to no treatment at all.'" *Rhinehart,* 894 F.3d at 737 (quotations omitted). But Plaintiff received treatment for his falls and pain. For that reason, Plaintiff appears to complain that his treatment was inadequate. *See* ECF 29, PgID 291 (arguing that Dr. Oliver "knew" that Plaintiff should have received better accommodations); *id.* at 293 (noting that PA Buskirk "knew, or he should have known" that asking Plaintiff to get off the ground after the fall would cause more injury to Plaintiff); ECF 37, PgID 467 (explaining that Nurse Smith "knew, or she should have known" that moving Defendant after his fall would cause further injury to Plaintiff).

Because Defendants—at different times—were regularly providing treatment to Plaintiff, Plaintiff needed to "present enough evidence for a factfinder to evaluate

10

the adequacy of the treatment provided and the severity of the harm caused by the allegedly inadequate treatment." *Rhinehart,* 894 F.3d at 737. Specifically, Plaintiff had to produce "'expert medical testimony . . . showing the medical necessity for' the desired treatment and 'the inadequacy of the treatments' the [he] received." *Id.* at 737–38 (quotations omitted). Put differently, Plaintiff had to "'place verifying medical evidence in the record to establish the detrimental effect' of the inadequate treatment." *Id.* at 738 (quotation omitted).

But Plaintiff offered no medical evidence or opinion that would have created a material fact about whether he received inadequate medical treatment. At its core, Plaintiff recognized that Defendants treated him for his injuries, but Plaintiff wanted different treatment. "Expressions of this sort, however, do not satisfy the requirements of an Eighth Amendment claim." *LaPine v. Corizon Inc.*, No. 18-cv-10750, 2020 WL 5884710, at *4 (E.D. Mich. Mar. 31, 2020) (Murphy, J.); *see also Rhinehart*, 894 F.3d at 744–45 ("'[F]orms of treatment' are generally 'a classic example of a matter for medical judgment' that 'does not represent cruel and unusual punishment.'") (quoting *Estelle*, 429 U.S. at 107).

In the end, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham*, 358 F.3d at 385 (quotation omitted). Because Plaintiff offered no medical evidence to satisfy the objective element of the deliberate indifference claims, no constitutional violation occurred. The Court will therefore grant qualified immunity to Nurse Smith

11

because there was no constitutional violation, and the Court will grant summary judgment to Dr. Oliver and PA Buskirk.

II. ADA Claim

The ADA prohibits "discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516–17 (2004). "Under the act's anti-retaliation provision, an employer may not 'discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA].'" *Carson v. Ford Motor Co.*, 413 F. App'x 820, 822 (6th Cir. 2011) (quoting 42 U.S.C. § 12203(a)).

Plaintiff offered an unusual argument for why Defendants are liable under the ADA. Although it is unclear which ADA Title Plaintiff had sued under, Plaintiff seemed to assert that he could sue Defendants in their individual capacities under the ADA's "anti relation provision." ECF 29, PgID 296 (citing *Shotz v. City of Plantation*, 344 F.3d 1161, 1179–80 (11th Cir. 2003) and *Key v. Grayson*, 163 F. Supp. 2d 697, 716–17 (E.D. Mich. 2001)); *see also* ECF 37, PgID 468 (Plaintiff's response brief to Nurse Smith's summary judgment motion again asserting a claim under the ADA's "'anti-relation' provision'" and citing *Shotz* and *Key*). Because *Shotz* and *Key* involve the ADA's *anti-retaliation* provision, the Court will assume that Plaintiff

12

made a misspelling and meant to bring his ADA claims under that provision. *See Shotz*, 334 F.3d at 1179–80; *Key*, 163 F. Supp. 2d at 716–17.

The anti-retaliation ADA claim against Defendants readily fails. "The ADA's prohibition on retaliation prevents an *employer* from 'discriminating against any individual . . . .'" *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 815 (6th Cir. 1999) (alteration deleted) (emphasis added) (quoting 42 U.S.C. § 12203(a)). A person who "does not independently qualify under the statutory definition of employers may not be held personally liable in ADA cases." *Id.* at 808 n.1; *see also EEOC. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir. 1995) ("[I]ndividuals who do not otherwise meet the statutory definition of 'employer' cannot be held liable under the ADA."). Because Defendants worked as medical providers at Plaintiff's prison, Defendants were employees—not employers under the ADA. ECF 25-2, PgID 144 (Dr. Oliver); ECF 25-3, PgID 19 (PA Buskirk); ECF 36-3, PgID 454 (Nurse Smith). Defendants are therefore entitled to summary judgment on the ADA claim because the ADA lacks a cause of action authorizing Plaintiff to sue them.

In sum, the Court has granted summary judgment on all the claims. Because Plaintiff is proceeding in forma pauperis, ECF 3, the Court will deny Plaintiff leave to appeal in forma pauperis: he cannot take an appeal in good faith. Fed. R. App. P. 24(a); 28 U.S.C. § 1915(a)(3).

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motions for summary judgment [25 and 36] are **GRANTED**.

13

**IT IS FURTHER ORDERED** that the Clerk of the Court must **STRIKE** Plaintiff's addendum [33].

**IT IS FURTHER ORDERED** that leave to proceed in forma pauperis on appeal is **DENIED**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 19, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 19, 2021, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager